**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE ECKSTEIN MARINE SERVICE, LLC § <br> n/k/a MARQUETTE TRANSPORTATION, § <br> GULF-INLAND, LLC, as owner/operator § <br> of the M/V ST ANDREW FOR § <br> EXONERATION FROM OR LIMITATION § <br> OF LIABILITY § | CIVIL ACTION NO. H-10-0156 |

**MEMORANDUM AND OPINION**

In this limitation of liability proceeding, the sole claimant, Lorne Jackson, moves to dismiss on the ground that the limitation plaintiff, Marquette Transportation Co. Gulf-Inland, LLC, did not file this limitation proceeding within six months after it received written notice of the claim in the form of the state-court lawsuit. (Docket Entry No. 29). Marquette responds that the documents attached to the motion must be disregarded or the motion must be treated as one for summary judgment; and, if treated as a motion for summary judgment, there are fact issues as to when "a corporate representative of Marquette [had] sufficient notice that a claim exceeded the value of the M/V St. Andrew ($750,000) to require the filing of a Complaint of Exoneration from or Limitation of Liability?" (Docket Entry No. 30, p. 1). For the reasons explained below, this court finds that the state-court petition did provide sufficient notice to Marquette to trigger the six-month period for filing the limitation proceeding. As a result, this case must be dismissed case under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**I.      The Motion to Dismiss: Rule 12(b)(1), Rule 12(b)(6), or Rule 56?**

An action filed by a shipowner seeking to limit its liability "must be brought within six months after a claimant gives the owner written notice of a claim." 46 U.S.C. § 30511 (The

Limitation Act); *see also* Supplemental Rules for Certain Admiralty and Maritime Claims F(1) ("Not later than six months after receipt of a claim in writing, any vessel owner may file a complaint in the appropriate district court, as provided in subdivision (9) of this rule, for limitation of liability pursuant to statute."); *Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 263–64 (5th Cir. 2001). The six-month prescriptive period requires the shipowner to act promptly to gain the benefit of the right to limit liability and prevents the shipowner from waiting to file until the later stages of any state court litigation. *See Exxon Shipping Co. v. Cailleteau*, 869 F.2d 843, 846 (5th Cir. 1989) ("If a petition is not filed within the six-month period, it must be dismissed as untimely.").

In his motion to dismiss, Jackson asserted that Marquette's limitation of liability action was not timely filed and moved to dismiss on that basis. Jackson attaches a copy of the state-court petition and deposition testimony of a witness to the accident. Marquette responds that this court cannot consider extrinsic evidence in resolving the instant motion without converting it from a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. Marquette argues that in the event the court does consider extrinsic evidence—and thereby turns the motion into one for summary judgment—there are genuine issues of material fact that would preclude judgment as a matter of law.

The Fifth Circuit has held that a claimant's challenge to the timeliness of the filing of a petition for limitation of liability is a challenge to the district court's jurisdiction to hear the petition for limitation of liability. *See Complaint of Tom-Mac, Inc.*, 76 F.3d 678, 682 (5th Cir. 1996); *see also Cincinnati Gas & Elec. Co. v. Abel*, 533 F.2d 1001, 1003 (6th Cir. 1976); *In re Waterfront License Corp.*, 231 F.R.D. 693, 696–700 (S.D. Fla. 2005). Attacks on subject-matter jurisdiction may be facial or factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990); *see also Levin v. Minn. Life Ins. Co.*, No H-07-1330, 2008 WL 2704772, at *2 (S.D. Tex. July 7, 2008)

(citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). A facial attack on subject-matter jurisdiction requires a court to scrutinize the pleadings and determine whether the claimant has sufficiently alleged subject-matter jurisdiction; and, the allegations in the complaint are taken as true. *See Rodriguez v. Christus Spohn Health Sys. Corp.*, No. C-09-95, 2010 WL 376267, at *4 (S.D. Tex. Jan. 26, 2010) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)). Factual attacks challenge the existence of subject-matter jurisdiction in fact. *MHL Tek, LLC v. Nissan Motor Corp.*, 2009 WL 3734110, at *2 (E.D. Tex. Nov. 4, 2009) (citing *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981)). When considering a factual attack, matters that go beyond the pleadings, such as affidavits and testimony, may be considered. *Menchaca*, 613 F.2d at 511. In a factual attack, a court's power to make findings of facts and to weigh the evidence turn on whether the factual attack on jurisdiction also implicates the merits of the plaintiff's cause of action. *Taylor v. Dan*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003) (citing *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1257 (11th Cir. 1997). If the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action, the trial court may proceed under Rule 12(b)(1) to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Williamson*, 645 F.2d at 412–13 (citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims. *Id.* at 413 (citing *Mortensen*, 549 F.2d at 891). In contrast, if an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. *Santerre v. Agip Petroleum Co., Inc.,* 45 F. Supp. 2d 558, 566 (S. D. Tex. 1999) (citing *Williamson*, 645 F.2d at 415–16). In such instances, the

motion must be analyzed under Federal Rule of Civil Procedure 12(b)(6) or Federal Rule of Civil Procedure 56.  *Id.* (citing *Williamson*, 645 F.2d at 415–16).

Because Jackson's motion raises what the Fifth Circuit treats as a jurisdictional issue and does not seek to address the underlying merits of the claim, the motion is a factual, and not a facial, attack. *See, e.g.*, *Frascogna v. Security Check, LLC*, No. 3:07-CV-686, 2009 WL 57102, at *2 (S.D. Miss. Jan. 7, 2009) (treating a motion to dismiss for lack of subject-matter jurisdiction as a factual attack for the purpose of addressing whether plaintiff lost standing by filing suit after receiving an offer of judgment); *Howery v. Chertroff*, No. H-08-196, 2009 WL 890400, at *3–6 (S.D. Tex. Mar. 27, 2009) (treating a motion to dismiss for lack of subject-matter jurisdiction as a factual attack for the purpose of determining whether Title VII plaintiff complied with requirements for filing suit in federal court); *Murray v. TXU Corp.*, 279 F. Supp. 2d 799, 801–04 (N.D. Tex. 2003) (treating a motion to dismiss for lack of subject-matter jurisdiction as a factual attack for the purpose of determining whether plaintiff timely filed a complaint with the Secretary of Labor per the Sarbanes–Oxley Act); *Smith v. Potter*, No. 3:08-CV-660, 2009 WL 3156528, at *2 (S.D. Miss. Sept. 28, 2009) (treating a motion to dismiss for lack of subject-matter jurisdiction as a factual attack for the purpose of determining whether ADEA plaintiff had exhausted his remedies).  This court may consider the materials the parties have submitted in evaluating the timeliness of Marquette's filing.

**II.   Analysis**

Much of the relevant record evidence is undisputed.  The original petition in this case was filed in Harris County, Texas on March 17, 2009.  Jackson sued Marquette, alleging that on February 28, 2009, he was a "Jones Act Seaman employed by Defendant as a member of the crew of a 65 ft. tug called the 'St. Andrew,' which was owned and/or operated by Defendant."  (Docket

Entry No. 29, Ex. A, ¶ V). Plaintiff sustained serious and debilitating injuries when he was struck by a mooring line due to the negligence of the defendant and its employees . . . and due to the unseaworthiness of the Defendant's vessel." (*Id.*). Jackson sued for past loss of earnings, future loss of earning capacity, past and future disability, past and future disfigurement, past and future medical and hospital expenses, and past and future pain and anguish, and maintenance and cure. (*Id.* at ¶ VII). Jackson alleged that the injuries left him with a "substantial degree of physical impairment" that was permanent. (*Id.*). Consistent with Texas practice, the state-court petition did not specify a damages amount but alleged it was far in excess of jurisdictional limits. (*Id.*).

Jackson's state-court petition was served on Marquette on April 28 and answered on June 10, 2009. (Docket Entry No. 32, 2). Marquette filed this limitation of liability petition on January 18, 2010. (Docket Entry No.1). After the parties filed motions and entered the necessary stipulation, this court dissolved the stay and injunction of the state-court proceedings. (Docket Entry No. 5).

Marquette's contention that its January 18, 2010 petition was timely filed in this court is based on the principle that written notice of a claim sufficient to begin the six-month period must reveal a "reasonable possibility" that the claim made is one subject to limitation. *Billiot v. Dolphin Servs., Inc.*, 225 F.3d 515 (5th Cir. 2000); *Tom-Mac*, 76 F.3d 678; *Complaint of Morania Barge No. 190, Inc.*, 690 F.2d 32, 34 (2d Cir. 1982). Courts in the Fifth Circuit have generally required that, in order to be sufficient to trigger the six-month period, written notice must inform the vessel owner: (1) of the details of the incident; (2) that the owner appeared to be responsible for the damages in question; (3) that the claimant intends to seek damages; and (4) that there is a reasonable possibility that the potential claim is subject to limitation. *See generally Tom-Mac, Inc.*, 76 F.3d at 683;

*Matter of Loyd W. Richardson Construction Co.*, 850 F.Supp. 555, 557 (S.D. Tex. 1993). Mere knowledge by the shipowner that an incident occurred is not enough to start the six-month period. *Complaint of Dolphin Services, Inc.*, No. 99-1883, 1999 WL 694086, at *4 (E.D. La. Sept. 7, 1999) (citing *Complaint of Okeanos Ocean Research Foundation, Inc.*, 704 F. Supp. 412, 414 (S.D.N.Y. 1989)). "A 'written notice of claim' sufficient to trigger the filing-period must reveal a 'reasonable possibility' that the claim is subject to [limitation of liability]." *Billiot*, 225 F.3d at 517 (citing *Tom-Mac*, 76 F.3d at 683). Under the "reasonable possibility" test, notice is sufficient if (1) it informs the shipowner of an actual or potential claim (2) which may exceed the value of the vessel and (3) is subject to limitation. *See id.* at 517–18; *Tom-Mac*, 76 F.3d at 683.

The filing of a complaint or a letter may serve as written notice of a claim. This is not a case in which the defendant sent "a cryptic letter" and then waited more than six months to file a complaint. Nor is this a case in which the state-court pleading was unclear about the vessel on which the injury occurred, the identity of the vessel owner, or that the claimant intended to seek damages from the vessel owner. Instead, the issue here is whether given the facts, the state-court pleading was sufficient to notify Marquette that there was a reasonable possibility that the injuries Jackson had suffered were sufficiently severe that the damages could exceed $750,000, the value of the *M/V St. Andrew*.

Jackson contends that the state court petition revealed a reasonable possibility that the claim was subject to the six-month limitations period because it informed Marquette, the vessel owner: (1) of the claimant's "demand of a right or supposed right"; (2) of the details of the incident; (3) that the owner appeared to be responsible for the damages in question; and (4) that the claimant intends to seek damages from the vessel owner. This is the type of information courts have held necessary

to trigger the six-month period. *Loyd W. Richardson Const. Co.*, 850 F. Supp. at 557; *Matter of Oceanic Fleet, Inc.*, 807 F. Supp. 1261, 1262–63 (E.D. La. 1992); *In re Santa Fe Cruz, Inc.*, 535 F. Supp. 2d 853, 857 (S.D. Tex. 2007); *In re Granite-Archer Western,* No. G-07-581, 2008 WL 4166214, at *4 (S.D. Tex. Aug. 29, 2008). Courts have also examined whether the vessel owner had access to information about the nature of the incident and resulting injuries and whether the vessel owner conducted a reasonable and prompt investigation to the nature of the injuries. *See, e.g.*, *In re Pinand*, 638 F. Supp. 2d 357, 359 (S.D.N.Y. 2009) ("Moreover, Pinand was present at the collision and observed the severity of Norcia's injuries."); *In re Donjon Marine Co., Inc*., No. 09-115, 2009 WL 3241687, at *3 (D.N.J. Oct. 7, 2009) ("Although Claimant's letter did not specify the amount of damages sought, Petitioner had the burden of investigating further whether the amount of the claim could exceed the value of the vessel."). In this case, in addition to the state-court petition, Jackson attaches and cites deposition testimony from an eyewitness: a deckhand who arrived on the scene immediately after the accident, describing in graphic terms the nature and severity of Jackson's foot and ankle injury from the mooring line. (Docket Entry No. 29, Ex. C, Deposition of Shawn Best). The description makes it clear that extensive surgery would be needed, the recovery period would be prolonged and the extent of recovery uncertain, the pain would be severe and prolonged, and the effects would be permanent. (*Id.* at pp. 12, 41). Jackson also points out that Marquette knew from its maintenance and cure obligations that Jackson's injuries were severe because Marquette paid more than $265,000 for five major surgeries. (Docket Entry No. 29, 4).

Marquette responds that the deckhand who testified worked for another entity and that he was not deposed until after the limitation complaint was filed. Marquette states that it did not know

until December 2009, when Jackson submitted to an independent medical exam, produced a report from his own medical expert, and made a $3 million settlement demand, that the damages claim presented a reasonable possibility of exceeding $750,000.

Neither the record nor the case law supports Marquette's argument. Both sides cite *Complaint of Tom-Mac, Inc.*, 76 F.3d 678 (5th Cir. 1996), but that case is factually distinguishable. In *Tom-Mac*, two crew members were killed on a barge attached to a tug. *Id.* at 679–80. In the resulting action, decedents' survivors' state-court petition alleged that defendant Tom-Mac controlled a "fleet of vessels" involved in the incident, and specifically identified the barge on which it occurred. *Id.* at 681. But more than a year after the original petition was filed, the petition was amended to "expressly clarify that [its] seaman status allegations [included] the tug." *Id.* at 684. No vessel was substituted for the barge identified in the original petition. *Id.* at 683. Tom-Mac then filed a limitation of liability action, based on the amendment being the first "written notice of claim" against the tug. *Id*. at 682. The *Tom-Mac* claimants challenged the district court's jurisdiction, asserting that the limitation petition was untimely because the original state-court pleading constituted sufficient written notice of claim. *Id.* at 682–83. The Fifth Circuit held that the original state-court petition provided Tom-Mac with a "reasonable possibility" that a claim subject to the Limitation Act had been made against the tug, including holding that the amendment to the claim was "very minimal." *Id*. at 683–85 (explaining that the "flotilla doctrine" applied and stressing that "[a] tug and her barge in tow [are] treated [for the purposes of the flotilla doctrine] as a single vessel, because owned in common and engaged in a common enterprise"). The court explained that it was clear that amended complaint "was based upon the same accident, and had the same parties, seeking the same damages from Tom-Mac (as the same decedents' employer) for the

same injury" as the original petition. *Id*. In that case, the fact that the injuries resulted in death meant that the court could assume that, with the other requirements met, the amount of the claim was reasonably likely to exceed the value of the barge and tug.

The parties also cite *Billiot v. Dolphin Services, Inc.*, 225 F.3d 515 (5th Cir. 2000). That case is also distinguishable. In *Billiot*,

> At issue [was] whether the original petition, which misidentified the vessel on which the incident allegedly occurred, coupled with [the claimant's] insistence that the vessel (KS-420) listed in that petition was correctly identified, even after [the vessel owner] informed him otherwise, is sufficient written notice of claim for the vessel (KS-410) not named until the petition was amended, with that amendment being subsequent to the filing-period running from the original petition.

225 F.3d at 517. The court noted that while the Limitation Act does not require plaintiff to have identified the vessel in his underlying action or other written notice of claim, the claimant's original petition did identify a specific vessel; the owner investigated and informed him he had identified the wrong vessel; the claimant initially insisted that he was correct; but, after expiration of the filing-period for a limitation of liability action, he amended his petition by identifying a new vessel, KS-410, whose identification had been provided by the vessel owner before the filing period running from the original petition expired. *Id.* The court emphasized that the result was "very fact-driven." *Id.*

> Marquette cites *Billiot* for the statement that:
>
> To hold otherwise would be to countenance plaintiffs' manipulation of the filing-period for limitation of liability actions, with, among other things, concomitant unnecessary costs in time, effort, and money (including possibly posting security) to defendants having to file such an action when they might otherwise not have been required to do so if the plaintiff, in electing to identify a specific vessel, had simply identified the correct one. And, obviously, limitation of liability actions filed unnecessarily in federal courts adversely affect them.

*Id*. But that statement was made in the context of the specific fact issue in that case and the court's

conclusion that the vessel owner was entitled to rely on the original petition (the written notice of claim) and, especially, his response to—and rejection of— the vessel owner's advising him he had identified the wrong vessel. *See id.* The court stated, "This holding is limited to the facts at hand. Based on them, the original petition was not a sufficient written notice of claim to reveal to [the shipowner] the requisite 'reasonable possibility' that a claim against KS-410, subject to limitation of liability, had been made." *Id.*

In the present case, unlike either *Tom-Mac* or *Billiot*, the issue is whether the original petition provided notice that the injuries presented a reasonable possibility that the damages could exceed the value of the vessel, $750,000. Marquette cites the Second Circuit opinion in *Complaint of Morania Barge No. 190, Inc*., 690 F.2d 32, 33–34 (2d Cir. 1982). The Fifth Circuit also cited that case approvingly in *Tom-Mac*. 76 F.3d at 683, 685 n.6. In *Morania*, the claimant affirmatively stated in a letter to a vessel owner that his total claim amounted to a figure substantially less than the value of the vessel. 690 F.2d at 33. More than four years later, on the eve of trial, the claimant moved to amend his complaint and bills of particulars to increase the amount of damages by millions of dollars, so that the amount became greater than the ship's value. *Id.* The Second Circuit concluded that the six-month period did not begin to run until the claimant moved to amend. *Id*. at 35. The court emphasized, however, that the vessel owner will not be excused from complying with the limitations period when doubt exists as to whether the claims will exceed the value of the ship. "In such cases, the vessel owner has the burden to investigate and seek clarification as to whether the amount of the claim or other claims likely to be the subject of litigation arising out of the same occurrence may exceed the value 'of the vessel and its freight.'" *Id.* at 34; *see also In re Complaint of Beesley's Point Sea-Doo, Inc*., 956 F. Supp. 538, 541 (D.N.J. 1997) (explaining that a claimant's

failure to state in a letter that the value of the claim exceeds the value of the vessel does not automatically make the letter insufficient to trigger the limitations period unless the claimant affirmatively represents that the amount of the claim is less than the value of the vessel); *Donjon Marine Co., Inc.*, 2009 WL 3241687, at *1–3 (finding that petitioner had the burden to investigate further the amount of damages plaintiff sought because a letter sent by plaintiff referenced a negligence lawsuit against the petitioner and the petitioner had an accident report alerting it to the date of the accident).

The court in *Morania* explained the basis of the rule, in detail, quoting Judge Learned Hand in the process:

> As soon as a claim is filed against him the shipowner has a six-month period within which to investigate whether the amount of the claim or other claims likely to be the subject of litigation arising out of the same occurrence may exceed the value of his ship. If such an excess appears reasonably possible, he will be barred from taking advantage of the right to limit his liability unless he files his petition within the six-month period. Indeed, even when doubt exists as to the total amount of the claims or as to whether they will exceed the value of the ship the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain. The rationale was succinctly described by Judge Learned Hand (concurring) in *Spooner* as follows:
>
>> "The purpose of putting a time limit upon the owner's privilege of limiting his liability is to advise the claimant in season, so that he may avoid preparing further to press claims that may have small value, or perhaps none whatever. So at any rate it seems to me. However, should it not be a corollary that the claimant shall give notice that there will in fact be a claim to limit, and not merely that there may be? If all that the owner had to do was to file a petition, it might well be that even the warning of a possible claim would be enough, but he must do more; he must either file security for the full value of his ship, or surrender her to a trustee. It does not seem reasonable to me to require this of him upon penalty of losing his privilege when the claimant's position is equivocal. On the other hand it is indeed reasonable to require him to make the claimant define his position. If the claimant refuses to do so, it may be that the period does not begin to run until he does; we need not decide that, because in the case at bar the owner made no attempt of any kind to

> force the claimant to make his position clear. That ought to throw upon the owner the risk that the claimant would in fact assert the claim which he spoke of only as possible, even though it was a conditional claim. For this reason I concur."

690 F.2d at 33–34 (quoting *In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 586–87 (2d Cir. 1958)) (internal citations omitted).

Marquette argues that under Jackson's "version of events," a vessel owner would have to "initiate a limitation of liability action immediately after every casualty, regardless of the nature and extent of the injuries, and regardless of whether the individual claimants would recover and return to employment." (Docket Entry No. 30, p. 7). This argument, however, disregards the purpose of the six-month period, which is to permit the vessel owner time to investigate whether the injuries present a reasonable possibility of exceeding the vessel's value. The court in *Morania* explained that the approach of placing on the vessel owner the burden of investigating an injury of uncertain extent recognizes the burdens of filing a limitation proceeding:

> When the owner, as here, does "force the claimant to make his position clear," with the result that the claimant affirmatively states on the record that his total claims amount to a figure that is substantially less than the value of the ship and no other claims are in the offing, the statutory time bar does not apply. The period would then begin to run only upon its appearing that there is a reasonable possibility that the claims would exceed the value of the ship. To hold otherwise would be to obligate a shipowner to go to the expense of posting security and taking the other steps necessary to commence a limitation proceeding when the claimant's specific representations demonstrate that such a proceeding will be wholly unnecessary. For instance, if a claim of $100,000 were made against a ship worth well over $1 million to require the filing of a petition for limitation of liability would serve no purpose other than to clog the courts with unneeded petitions and cause great expense to shipowners without in any way benefiting claimants. Against the possibility that subsequent events might prove that a claim was understated, common experience demonstrates that the great majority of claimants tend to overstate the amount of their claims and that it is a rare instance when a claimant fails to anticipate all damages. A rule requiring a shipowner to seek limitation of liability regardless of the amount claimed might encourage claimants to understate the amount of their damage in the hope that the shipowner would be misled into not filing a timely

petition for limitation.

690 F.2d at 34. In *Morania,* the court held that there was no obligation to institute a limitation of liability proceeding within six months after the claimant first gave notice of its claims because the notice made clear that the plaintiff's total damages would be substantially less than the value of the vessel and its freight (the limitation fund) and there were no claims by anyone else, and for 4 ½ years after the claimant filed suit, it continued to represent in its complaint and verified bills of particulars that its total damages were a specific amount substantially less than the value of the barge and freight. *Id.* at 34–35. Morania was entitled to rely on these sworn representations and not required to file a complaint for exoneration from or limitation of liability until the complaint and bill of particulars were amended to increase the claim. *Id.* at 35. In the present case, however, unlike in *Morania* and like *Beesley's Point* and *Donjon Marine*, the complaint raised the possibility of damages exceeding the vessel's value and at a minimum made the extent of the damages uncertain; the other requirements for triggering the six-month period were all met; and the vessel owner had the burden of investigating to determine the extent of the injury. The investigative steps revealed in the record are discovery requests sent to the claimant, a determination of his earning history and medical bills (Marquette asserts that it paid $60,000 in bills, while Jackson asserts that the bills were over $200,000; the discrepancy is not explained), and an investigation of jury verdicts for "similar" injuries. (Docket Entry No. 1, Ex. E, F, G). Marquette cites one of Jackson's responses to an interrogatory, describing a "compound fracture in the tibia and fibia, fractured femur and ankle, needed skin graft all to the left leg, damaged left knee; awaiting surgery. The ordeal was, and is, painful and I cannot walk." (Docket Entry No. 30, p. 5). This answer does not provide any basis for believing that there was no reasonable possibility that the damages would exceed $750,000. To

the contrary, the description is of a severe injury with debilitating present consequences, a high likelihood of great past and future suffering, and uncertain prognosis. There is no indication of any affirmative statement on which Marquette could rely in delaying filing a limitation proceeding.

Given the record, this court concludes that Marquette's limitation proceeding was untimely filed. This case is dismissed.

SIGNED on August 19, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge